Waterville Co. v. Brox                CV-95-620-SD  04/24/96
                    UNITED STATES DISTRICT COURT FOR THE

                         DISTRICT OF NEW HAMPSHIRE


Waterville Company, Inc.


     v.                                    Civil No. 95-620-SD


Raymond L. Brox, et al



                           O R D E R


     Raymond L. Brox, his wife, and his four children appeal from

the decision of the bankruptcy court granting Waterville Company,

Inc.'s (WCI) motion for summary judgment and denying the Broxes'

motion for same.  At issue in this controversy is whether the

court properly disallowed the Broxes' claims, which derive from

agreements conferring upon the Broxes the right to collect free

skiing privileges at the Waterville Valley ski area.



                           Background

     The relevant facts are not in dispute.  The instant matter

dates back some three decades and concerns a set of transactions

which culminated in WCI's ownership and operation of the ski

lifts and facilities at the Waterville Valley ski area.

Waterville Valley Lift Corporation (Lift Corp.) was an original operator of the ski lifts at Waterville Valley. On September 13, 1965, Thomas Corcoran, Raymond Brox, and George Brox, Inc., entered into an agreement (hereinafter "original agreement") which granted Corcoran an option to purchase stock owned by Raymond Brox in Lift Corp. and to obtain two Lift Corp. notes held by Raymond Brox and George Brox, Inc. In consideration for the transfer of Raymond Brox's stock, Corcoran agreed to pay $75,000 and to transfer certain real estate to Raymond Brox. In addition, Corcoran agreed to provide permanent privileges for Raymond Brox and his immediate family on any lifts and facilities in Waterville Valley.

The agreement as amended in October 30, 1965, defined "immediate family" as the wife and children of Raymond Brox and restricted the transfer of the ski passes. The agreement was amended a second time on February 1, 1966, at which point Corcoran nominated WCI to receive the transfer of the Lift Corp. stock and notes. In said amendment, WCI and Corcoran agreed that the issuance of permanent lift privileges would be completed on or before June 1, 1966.

Shortly thereafter, following the exercise of the option and the parties' fulfillment of their respective obligations, the Broxes began to enjoy free use of the lifts and facilities at

2

Waterville Valley. Such privileges came to a halt in 1994 when WCI, in the course of bankruptcy proceedings, sold its ski area assets.

WCI filed its original petition under Chapter 11 of the Bankruptcy Code on June 19, 1994. On October 31, 1994, WCI sold all of its ski assets, including its lifts, to S-K-I Limited pursuant to an order of the bankruptcy court. Article II of the Purchase and Sale Agreement between WCI and S-K-I Limited states in pertinent part: "Furthermore, Buyer's acquisition of the Purchased Assets is not intended as, and shall not be, an acquisition of any part of Seller's business as a going concern. The parties agree that Buyer shall not be considered a successor to the business which Seller previously operated at the Ski Areas." Memorandum Opinion and Order at 2 n.1 (Vaughn, J., Oct. 20, 1995). Neither Corcoran nor WCI is alleged to have any ownership interest in S-K-I Limited. Furthermore, the Broxes did not file an objection to the transfer. See Order at 2.

Following WCI's filing for bankruptcy, the Broxes filed a proof of claim in the bankruptcy proceeding on October 13, 1994, asserting that they were entitled to "contract rights for lifetime lift tickets" at the Waterville Valley ski area, or, failing that, damages in the approximate amount of $7,000 per year. The Broxes subsequently filed an amended claim for

$257,541.62.  WCI objected to the allowance of the Broxes'
claims, and both WCI and the Broxes filed motions for summary
judgment.  The bankruptcy court issued a memorandum opinion and
order on October 20, 1995, granting WCI's motion for summary
judgment and disallowing the Broxes' claims.  This appeal ensued.

## Discussion

### 1.  Standard of Review

The issue presented is one of basic contract interpretation.
In granting WCI's motion for summary judgment, the bankruptcy
court concluded that the relevant portions of the agreements were
unambiguous.  "'[I]nterpretation of a contract, including whether
a contract term [or clause] is ambiguous, is ultimately a
question of law . . . .'"  Merrimack School Dist. v. National
School Bus Serv., Inc., 140 N.H. 9, ___, 661 A.2d 1197, 1198
(1995) (quoting Holden Eng'g & Surveying v. Pembroke Rd. Realty
Trust, 137 N.H. 393, 395, 628 A.2d 260, 262 (1993)) (alterations
in Merrimack); accord Echo Consulting Servs. v. North Conway
Bank, ___ N.H. ___, ___, 669 A.2d 227, 230 (1995); Walsh v.
Young, 139 N.H. 693, 695, 660 A.2d 1139, 1141 (1995).  When a
question of law is raised, the district court's review on appeal
from a bankruptcy decision is de novo.  See Jeffrey v. Desmond,
70 F.3d 183, 185 (1st Cir. 1995), Rule 8013, Fed. R. Bankr. P.;

4

In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 1991)
(collecting cases); cf. Dahar v. Raytheon Co., 880 F.2d 1491,
1495 (1st Cir. 1989).  In addition, the court reviews a grant of
summary judgment de novo, applying the same criteria employed by
the lower court; i.e., the judgment can be upheld only if the
record discloses no trialworthy issue of material fact and the
moving party is entitled to judgment as a matter of law.  Alexis
v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 346 (1st
Cir. 1995).

2.  The Merits

In interpreting a contract, the court must arrive at an
objectively reasonable formulation of its meaning.  The contract
should be analyzed as a whole, and its terms should be given
ordinary meanings as understood by reasonable people.  Echo
Consulting, supra, ___ N.H. at ___, 669 A.2d at 230; Merrimack,
supra, 140 N.H. at ___, 661 A.2d at 1198.  The court may also
consider the objective intent and expectations of the parties at
the time of contracting.  Gamble v. University Sys. of N.H., 136
N.H. 9, 13, 610 A.2d 357, 360 (1992).  Contractual language
should be deemed ambiguous only after it is determined that the
contracting parties "reasonably differ as to its meaning."
Dahar, supra, 880 F.2d at 1495.

The instant dispute largely concerns the interpretation of certain language of the original agreement, which states that Corcoran is obligated to provide "permanent privileges, without charge, for Raymond Brox and his immediate family on any lifts and facilities in Waterville Valley operated by Corcoran or by a new corporation in which Corcoran has an interest or to which he transfer his interest." Original Agreement ¶ 5(c). This provision became applicable to WCI when Corcoran designated WCI as his nominee.[1] The bankruptcy court found that the term "interest" refers to an ownership interest in the corporation operating the ski lifts and facilities. The court agrees that such is the only sensible interpretation to be given the words "a new corporation <u>in which</u> Corcoran has an interest or to which he transfers <u>his</u> interest." <u>Id.</u> (emphasis added).[2] Thus, the

_____

[1]The original agreement specifies that references to Corcoran include "Corcoran and his nominee." <u>See</u> Original Agreement ¶ 10. As has been discussed, WCI became Corcoran's nominee to the contract by virtue of the February 1, 1966, agreement. The bankruptcy court, apparently overlooking that WCI became Corcoran's nominee to the contract, concentrates on whether Corcoran, not WCI, transferred his ownership. Nevertheless, the bankruptcy court ultimately reaches the correct destination, despite its temporary deviation from the path.

[2]The Broxes do not contend that the term "interest" includes an interest in the corporation's assets (as opposed to solely an ownership interest). Thus, even if this argument did have merit, it is likely to have been waived. <u>See</u> <u>Brown v. Hot, Sexy and Safer Prods., Inc.</u>, 68 F.3d 525, 537 (1st Cir. 1995) ("'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived'" (quoting <u>United</u>

contract required that WCI provide ski privileges to the Broxes so long as WCI operated lifts and facilities in Waterville Valley or transferred its interest in the company to a new corporation. In October 1994 WCI ceased its operations. At that time WCI did not transfer ownership interests in its corporation to a new corporation; rather, by order of the bankruptcy court issued on October 31, 1994, WCI simply transferred its ski-related assets to S-K-I Limited. Accordingly, by the plain terms of the contract, WCI's obligations to the Broxes were extinguished once WCI ceased operating the ski lifts and facilities in Waterville Valley.

On appeal, the Broxes maintain that the duration of their privileges is measured by the lifetimes of certain members of the Brox family. To support such assertion, the Broxes cite to the October 30, 1965, agreement, which provides that the phrase "immediate family" contained in the original agreement includes the wife and children of Raymond Brox and provides that they cannot transfer or assign their privileges. The court agrees that the longevity of the Broxes' ski privileges does depend to a certain extent on their respective lifetimes. However, such restriction in no way disturbs the additional limitation to the

States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990))), cert. denied, ___ U.S. ___, 116 S. Ct. 1044 (1996).

7

privileges contained in paragraph 5(c) of the original agreement. Moreover, the court's careful review of the October agreement reveals that no language contained therein supports the notion that the parties contemplated the Broxes' lifetimes to be the only restriction on the duration of their ski privileges.[3]

The Broxes further argue that the bankruptcy court's interpretation is unreasonable because WCI would have been able to sell its ski assets to a third party at a much earlier date, thereby evading its responsibility to provide the ski privileges. While such scenario is plausible, the contract indicates that the Broxes did not thoroughly protect themselves against this risk. The Broxes add a twist to this argument by asserting that under the contract Corcoran would have an incentive to avoid its obligations through the "expedient" of "selling out to an

---

[3]The Broxes also argue that the circumstances under which the contract was entered support the conclusion that the ski privileges were intended to have indefinite character. They maintain that when Raymond Brox and his family lost control over the lifts, they intended that the lift passes be permanent. However, as WCI argues, the circumstances surrounding the original agreement actually support the conclusion that the parties contemplated that the ski privileges would depend on whether Corcoran or WCI retained an ownership interest in the corporation operating the lifts and facilities. As discussed, under the original agreement, the privileges were to extend to any lifts and facilities operated by Corcoran or by a new corporation to which he transferred his interest. See Original Agreement ¶ 5(c). WCI contends, and this court agrees, that the "new corporation" mentioned in the agreement most likely refers to WCI, which was subsequently nominated by Corcoran to receive his interest in the Broxes' stock.

8

unrelated third party." Appellant's Brief at 10. This variation of the argument, however, is completely unpersuasive, as it would take imagination beyond that possessed by the court to accept that Corcoran or WCI would cease operating the ski lifts and facilities at Waterville Valley simply to avoid providing free passes to one family.

Finally, the Broxes invite the court to travel again to paragraph 5(c) of the original agreement. On this visit, they ask that the court spend time taking in the word "permanent" and construe the language "on any lifts and facilities in Waterville Valley operated by Corcoran or by a new corporation" to be merely part of a "geographical designation" specifying which lifts the Broxes were entitled to use. The Broxes further note that the phrase "on any lifts and facilities in Waterville Valley operated by Corcoran or by a new corporation" does not explicitly state that the privileges exist "so long as" the lifts and facilities are operated by Corcoran or the new corporation. Having reviewed this language a second time, the court remains unconvinced that the Broxes have set forth a reasonable interpretation.

## Conclusion

For the reasons expressed herein, the memorandum opinion and order of the bankruptcy court is affirmed.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 24, 1996

cc:  Grenville Clark III, Esq.
     Richard E. Kaplan, Esq.
     Charles R. Dougherty, Esq.
     Ronald J. Cereola, Esq.
     Charles R. Bennett, Jr., Esq.
     George Vannah, Clerk, US Bankr. Ct.