**Roger RINGUETTE, Plaintiff,**

v.

**CITY OF FALL RIVER,
et al., Defendants.**

**Civ. A. No. 93–11212–PBS.**

United States District Court,
D. Massachusetts.

Nov. 9, 1995.

Brian R. Cunha, Brian Cunha & Associates, Fall River, MA, for Roger Ringuette.

Diane M. Bunk, Corporation Counsel, Law Department, Fall River, MA, Bernadette L. Sabra, Sabra Law Offices, Somerset, MA, for City of Fall River, Francis McDonald.

William G. Camara, Fall River, MA, Diane M. Bunk, Corporation Counsel, Law Department, Fall River, MA, for Raymond Paradis.

Kenneth G. Littman, Peppard & Littman, Fall River, MA, Andrew B. Peppard, Peppard & Littman, Fall River, MA, Diane M. Bunk, Corporation Counsel, Law Department, Fall River, MA, for Richard Levesque.

## MEMORANDUM AND ORDER

SARIS, District Judge.

Defendants Levesque and Paradis move for judgment as a matter of law with respect to their defense of qualified immunity to Plaintiff Ringuette's claim that the officers' decision to place Ringuette in protective custody for a second twelve hours ("re-PC") violated his right to be free from unreasonable seizure under the Fourth Amendment. Fed.R.Civ.P. 50(a). Qualified immunity is essentially a legal question, *Elder v. Holloway*, — U.S. ——, ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994), and the court is to decide the issue as early in the litigation as possible. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). This issue could not be resolved on summary judgment because there were genuine issues of material fact "as to the reasonableness of Levesque's and Paradis' actions in light of the circumstances, particularly in light of Ringuette's condition and his statements at the time" of the decision to re-PC. *Ringuette v. City of Fall River*, 888 F.Supp. 258, 266 (D.Mass.1995). The facts of this case are discussed at length in the Court's opinion, *supra*, and therefore do not bear repeating here.

As a matter of law, the officers violated the Massachusetts Protective Custody Law, M.G.L. c. 111B, § 8 ("Ch. 111B"), by keeping Ringuette in custody beyond the twelve hour period.[1] The statute does not provide for a decision to re-PC; indeed, the outside twelve hour limit ensures that persons are not held beyond a reasonable "sobering up" period.[2] According to Plaintiff, because the decision to re-PC Ringuette violated ch. 111B, therefore, there was an unreasonable seizure of his person in violation of the Fourth Amendment.

1. M.G.L. c. 111B, § 8 provides in pertinent part: Any person who is incapacitated may be assisted by a police officer with or without his consent to his residence, to a [detoxification] facility or to a police station.... No person assisted to a police station pursuant to this section shall be held in protective custody against his will; provided, however that if suitable treatment at a facility is not available, an incapacitated person may be held in protective custody at a police station until he is no longer incapacitated or for a period of not longer than twelve hours, whichever is shorter.

2. Also implicit in the statute is the assumption that only twelve hours are required to recover from mere intoxication from alcohol.

The First Circuit and the Massachusetts Supreme Judicial Court both have held that the decision *initially* to place a person in protective custody is a Fourth Amendment "seizure" and therefore must be objectively reasonable. *See Veiga v. McGee*, 26 F.3d 1206, 1214 (1st Cir.1994); *Commonwealth v. O'Connor*, 406 Mass. 112, 119–22, 546 N.E.2d 336, 341–42 (1989); *cf. Graham v. Connor*, 490 U.S. 386, 395–96, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989) (determining proper reasonableness inquiry in 42 U.S.C. § 1983 claim based on excessive force in making arrest).

These cases do not determine the question of whether the Fourth Amendment was violated by Ringuette's re-PC. The undisputed evidence is that one or more police officers asked Ringuette if he wanted to leave, after the initial twelve hour protective custody period. While it is disputed as to whether he refused to leave or simply did not (or could not) respond, all parties agree he was incapacitated at the time of the re-PC. The re-PC was a paper seizure, in the sense that there was no new or aggravated restraint on his freedom or additional submission to a show of authority, but rather the continuation of a prior detention. As such, a difficult question is presented as to whether Ringuette was "seized" in a constitutional sense in the circumstances of this case when the police filled in the form to re-PC him after the initial twelve hour period was over. *See Albright v. Oliver*, —— U.S. ——, ——, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) (defining seizure as "surrender to the State's show of authority"); *Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10 ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical show of authority, . . . in some way restrained the liberty of a citizen.' ").

■ Although the issue is far from clear cut, the Court concludes that Ringuette's re-PC was a Fourth Amendment seizure conducted without lawful authority, and therefore, was unreasonable. *See Barna v. City of Perth Amboy*, 42 F.3d 809, 820 (3d Cir.1994) ("[A]n unreasonable detention is one conducted without lawful authority.") (citing *Veiga*, 26 F.3d at 1214). By virtue of the "re-PC," Ringuette was not "free to leave" in that he could simply have walked through the station door at any time he felt ready. Indeed, the police could continue to detain him as long as they believed he posed a danger to himself or society. At all times that he was in Fall River's custody, Ringuette was in a locked jail cell and his freedom of movement was correspondingly restrained. Accordingly, the decision to re-PC him was a physical show of authority which restrained Ringuette's liberty by keeping him in custody.

■ Determining that Ringuette's re-PC was an unconstitutional seizure, however, does not settle the issue of qualified immunity. "Qualified immunity shields state officials exercising discretionary authority from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware.' " *Souza v. Pina*, 53 F.3d 423, 425 (1st Cir.1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Therefore, if "a reasonable officer could have believed [Ringuette's re-PC] to be lawful, in light of clearly established law and the information [Levesque and Paradis] possessed," the Defendants are immune to liability on that ground. *See Hunter*, 502 U.S. at 227, 112 S.Ct. at 536; *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ To be "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. In other words, the "unlawfulness [of the officers' conduct] must be apparent[.]" *Id.* Although the general right to be free from unreasonable seizures is "clearly established," the more precise and relevant question is whether a reasonable officer would have known that the decision to re-PC Ringuette, under the circumstances known to that officer, was violative of the Fourth Amendment. *See id.* at 640–42, 107 S.Ct. at 3039–41; *Souza*, 53 F.3d at 425; *McBride v. Taylor*, 924 F.2d 386, 389 (1st Cir.1991).

Even though it is undisputed that a reasonable officer would have known that a re-PC was not authorized by ch. 111B, he would not necessarily have known that such a violation of Massachusetts law would amount to a deprivation of constitutional rights, particularly where, as here, Ringuette was still incapacitated and had been given the option of leaving. The "clearly established right" must be a federal constitutional or statutory right. A violation of a state statute, in itself, does not give rise to a cause of action under 42 U.S.C. § 1983. *See Elder,* — U.S. at —, 114 S.Ct. at 1023; *Davis v. Scherer,* 468 U.S. 183, 193–96, 104 S.Ct. 3012, 3018–21, 82 L.Ed.2d 139 (1984). As the issue of whether a decision to re-PC violates the Fourth Amendment is one of first impression in the courts, it should not be considered to have been "clearly established" at the time of the incident. *See Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985) (where there is legitimate question regarding illegality of official action, qualified immunity is conferred).[3]

Undisputed testimony during the Plaintiff's case has demonstrated that Ringuette was seriously incapacitated during his stay in protective custody and that, when attempts were made to release Ringuette, he expressed a desire to remain there, or responded in a way which the police officers believed indicated consent. Indeed, while all police officers acknowledge breaking the law by re-PCing Ringuette, they also testified that they were doing so for his own good. Under these circumstances, a reasonable officer may have "reasonably but mistakenly" concluded that Ringuette could remain in protective custody without violating his Fourth Amendment rights. *See Hunter,* 502 U.S. at 227, 112 S.Ct. at 536. Although there may well have been deliberate indifference to Ringuette's serious medical needs, that dispute forms the basis of a Fourteenth Amendment due process claim rather than one under the Fourth Amendment.[4] The defendants are entitled to qualified immunity on the Fourth Amendment claim.[5]

### ORDER

Therefore, Defendants Levesque and Paradis' motion for judgment as a matter of law with respect to the Fourth Amendment claim is ***ALLOWED.***

---

3. Indeed, the Court has already noted that the decision to apply the Fourth Amendment to the re-PC under these circumstances is not clear cut. That this is such a close question underscores the fact that the law was not previously "clearly established" on this point. *See Elder,* — U.S. at —, 114 S.Ct. at 1023 ("Whether an asserted federal right was clearly established at a particular time [i.e., when the alleged violation occurred], so that a public official who alleged violated the right has no qualified immunity from suit, presents a question of law....").

4. The constitutional right of persons in police custody to attention to their serious medical needs is "clearly established." *See DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005–06, 103 L.Ed.2d 249 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."); *Manarite v. City of Springfield,* 957 F.2d 953, 954–56 (1st Cir.) (applying constitutional analysis to section 1983 claim based on alleged deliberate indifference of police to person in protective custody), *cert. denied,* 506 U.S. 837, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992); *Ringuette,* 888 F.Supp. at 268–70.

5. An entirely different set of circumstances would be presented if it were shown that Ringuette asked to be released or requested medical care and then was denied assistance by the police. Under this set of facts, a reasonable officer would have known that detention in protective custody beyond the twelve hour period was unlawful (i.e., unconstitutional) and qualified immunity would be denied.