John Davies CORBIN, Plaintiff

v.

Michael CHITWOOD, et al., Defendants

No. CIV. 01–93–P–H.

United States District Court, D. Maine.

May 17, 2001.

Michael J. Waxman, John Davies Corbin, Pro Se, Portland, ME, for Plaintiff.

Edward R. Benjamin, Jr., Thompson & Bowie, Portland, ME, for Defendants.

## MEMORANDUM DECISION AND ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER

HORNBY, Chief Judge.

This case pits privacy and other individual rights against a community's interest in knowing that a convicted sexual offender against children is in its midst. I conclude that the police notification to the community of the sexual offender's presence violated no constitutional rights.

### I. FACTS

The plaintiff, John Davies Corbin, is a convicted sex offender now living in Maine. Compl. ¶ 6. In 1986, he pleaded guilty in California to two counts of nonviolent lewd and lascivious acts with minors under the age of fourteen and one count of indecent exposure. *Id.;* Aff. of Det. Scott B. Dunham ¶ 5. (According to Corbin, he pleaded guilty to exposing his private parts while minors were in his apartment and to touching the minors while they were clothed. Compl. ¶ 6.) As a result of the conviction. Corbin was required to register as a sex offender while residing in California. Corbin Aff. ¶ 12; Dunham Aff. ¶ 4. The California Violent Crime Information Center ("VCIC") and the FBI's National Crime Information Center ("NCIC") maintain information concerning Corbin and his convictions. Compl. ¶¶ 8–10; Dunham Aff. ¶¶ 4–5; Aff. of Portland Police Chief Michael J. Chitwood ¶¶ 1–2.

On July 8, 1999, the Social Services Director at the Portland YMCA filed a report alleging that on May 6, 1999, Corbin engaged in inappropriate sexual gestures and remarks in the public shower in the presence of three minor boys. Dunham Aff. ¶ 2, Ex. A. (According to Corbin, he

did not make inappropriate sexual gestures. As for any remarks, he says the young boys were not offended. Corbin Aff. ¶¶ 5–6.) An arrest warrant was issued, charging the plaintiff with disorderly conduct for the incident. Corbin Aff. ¶ 6; Dunham Aff. ¶ 3; Chitwood Aff. ¶ 3. On December 12, 2000, a criminal complaint for sexual aggression toward a child was filed against Corbin for the YMCA incident. Corbin Aff. ¶ 7; Chitwood Aff. ¶ 4, Ex. B. This charge and the disorderly conduct charge are currently pending in the Maine state courts. Corbin Aff. ¶ 7; Aff. of Attorney Peter Rodway (Corbin's defense lawyer in the state court proceedings) ¶¶ 2–4.

As a result of the arrest warrant for disorderly conduct, two Portland police officers located Corbin at his Maine residence, 263 Cumberland Avenue in Portland. Dunham Aff. ¶ 6; Chitwood Aff. ¶ 4. This residence is in close proximity to the Portland Boys and Girls Club and Portland High School. Corbin Aff. ¶ 16; Dunham Aff. ¶ 8; Chitwood Aff. ¶ 5. The officers spoke with Corbin and informed him of the outstanding warrant. Dunham Aff. ¶ 6; Chitwood Aff. ¶ 4. They stepped into his apartment while Corbin put on his shoes and prepared to go with them. Dunham Aff. ¶ 6; Chitwood Aff. ¶ 4. While the officers were inside the apartment, they observed on Corbin's computer screen an image of two boys (the age of the pictured boys is disputed; Corbin states they were clearly fourteen, Corbin Aff. ¶ 8; the officers say six or seven, Dunham Aff. ¶ 6) pulling down their underwear to expose their backsides. Dunham Aff. ¶ 6. The officers thereafter obtained a search warrant from a justice of the peace to search for sexually explicit materials, including photographs and computer images. Rodway Aff. ¶ 5; Dunham Aff. ¶¶ 6–7; Chitwood Aff. ¶ 4.

Police officers executed the search warrant and seized Corbin's computer, some floppy disks, a camera and undeveloped film. Dunham Aff. ¶ 7. On this record. I cannot determine what the materials contained, Corbin denies there was any "kiddie porn." Corbin Aff. ¶ 9. The police say only that a "review of images stored on the computer showed images of young boys, some in positions and/or acts best described as 'sexually explicit.'" Dunham Aff. ¶ 7. Corbin has now been charged in state court with possessing sexually explicit materials. Corbin Aff. ¶ 11; Dunham Aff. ¶ 7; Chitwood Aff. ¶ 4.

Detective Dunham contacted Cathy Okubo, a criminal intelligence specialist with the State of California's Department of Justice. Dunham Aff. ¶ 4. Okubo provided the Portland Police Department with a copy of Corbin's registry file kept by the VCIC. Dunham Aff. ¶ 4, Ex. B. Okubo stated that Corbin was not in violation of the California sex registration law; that California recognizes Corbin as a mentally disordered sex offender; and that the Sexual Habitual Offender Program ("SHOP") has identified Corbin as "high risk." Dunham Aff., Ex. B. Corbin's records from VCIC state that he is a serious sex offender for the purposes of Megan's Law (a sexual offender registry and community notification law prompted by the rape and murder of seven-year-old Megan Kanka by a convicted sex offender). *Id.* The records describe Corbin's offenses of conviction as "crimes against children/lewd or lascivious," "commitment (90 days) as a mentally disordered sex offender (MDSO)," "oral copulation" and "indecent exposure." *Id.* The records also contains detailed descriptions of the offenses. *Id.*

Based on this information and the pending criminal charges against Corbin, the Portland Police Department determined that Corbin's activities constituted a public

safety problem. Compl. ¶¶ 13–14; Dunham Aff. ¶ 9; Chitwood Aff. ¶ 6. On November 29, 2000, in the area of Corbin's Cumberland Avenue residence, they distributed a Neighborhood Policing Bulletin, identifying Corbin and including a photograph. Compl. ¶¶ 13–14; Dunham Aff. ¶ 9, Ex. D; Chitwood Aff. ¶ 6. The Bulletin revealed Corbin's date of birth, height, weight, physical description and home address. Dunham Aff., Ex. D. It stated that:

> John Corbin has been convicted of various child sexual crimes in California starting in 1980, which include **Child Sexual Misconduct, Indecent Exposure and Oral Copulation.** Corbin registered as a sex offender with the State of California in 1995. The State of California recognizes Corbin as a sex offender. The California Sexual Habitual Offender Program (SHOP) has identified Corbin as a "High Risk." Corbin's victims have been young males. Corbin is not to have contact with anyone under 17 years of age.

Dunham Aff., Ex. D (emphasis in original). Local news media covered the notification, and Chief Chitwood responded to questions concerning Corbin and why he was considered a public safety risk. Corbin Decl. ¶ 3; Compl. ¶¶ 3, 16–17; Chitwood Aff. ¶ 6.

Corbin disputes much of the information contained in the Neighborhood Policing Bulletin and the information in the VCIC. He states that he never used drugs or threats of force to coerce sexual contact with boys. Corbin Aff. ¶ 1. He claims that he did not perform oral copulation. *Id.* ¶ 2. He also denies that he is currently classified by California as a MDSO. *Id.*

¶ 14. He also claims that the California state courts invalidated a number of his sex offense convictions. *Id.* ¶¶ 4, 14, 15.

## II. PROCEDURAL POSTURE

Corbin seeks a temporary restraining order[1] to prevent the defendants, the Chief of the Portland Police Department, the City of Portland and unnamed police officers and employees of the City, from any further community notification of his prior criminal record and home address. Corbin wants to prevent the defendants from repeating the November 29, 2000 publicity event at any new residence he establishes. Corbin claims that: (1) the defendants' distribution of a flyer containing his address and arrest record violates his constitutional right to privacy; (2) the community notification subjects him to an unconstitutional *ex post facto* law; and (3) the defendants violate his substantive and procedural due process rights in not giving him notice and a hearing concerning the public notification before it occurs.[2]

## III. ANALYSIS

■ In considering an application for a temporary restraining order or preliminary injunctive relief, this court must weigh the (1) the likelihood of success on the merits; (2) the potential for irreparable harm to the person seeking relief; (3) the balance of the hardship if relief is denied versus the other party's hardship if relief is granted; and (4) the effect of the decision on the public interest. *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 673 (1st Cir.1998); *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12,

---

1. At a conference of counsel, Corbin asked that the issue be decided on the papers without an evidentiary hearing.

2. Corbin also claims that the defendants lack statutory authority for what they did. That is a state law claim, not the basis for any federal constitutional claim. If that is ultimately all that remains of Corbin's claim, I will dismiss it without prejudice under 28 U.S.C. § 1367(c).

15 (1st Cir.1996); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop,* 839 F.Supp. 68, 70 (D.Me.1993). Likelihood of success on the merits is the most important factor in the analysis, see *Philip Morris,* 159 F.3d at 674; *Ross–Simons,* 102 F.3d at 16. Because I conclude that Corbin has no likelihood of success on the merits, his motion is DENIED.

### A. The Constitutional Right to Privacy

Corbin argues that the defendants violated his constitutional right to privacy by distributing information about him on a flyer. Specifically, Corbin argues that the defendants violated his privacy rights by (1) disclosing his criminal record from California; (2) notifying the community about this information in a sensationalist and inflammatory manner; (3) disclosing false and inaccurate material in the flyer; and (4) disclosing his home address.

#### (1) Disclosure Alone

Based on the current record, I conclude that the Portland Police Department was entitled to view Corbin's criminal history information. Both the FBI's National Crime Information Center ("NCIC") and the California Violent Crime Information Center ("VCIC") permit disclosure of an individual's criminal record to law enforcement agencies. *See* 28 U.S.C.A. § 534(a)(4) (West 1993) ("The Attorney General shall—(4) exchange such records and information with, and for the official use of, the authorized officials of the Federal Government, the States, cities and penal and other institutions"); Cal.Penal Code § 11105(c)(7) (West 2000) ("The Attorney General may furnish state summary criminal history information upon a showing of a compelling need to any of the following . . . : (7) Peace Officers of the United States, other states . . . ."). Corbin

argues that the Portland Police Department was not entitled to make this information public. *See* 28 U.S.C.A. § 534(b) ("The exchange of records and information authorized by subsection (a)(4) of this section is subject to cancellation if dissemination is made outside of the receiving department or related agencies."); Cal.Penal Code § 11142 (West 2000) ("Any person authorized by law to receive a record or information obtained from a record who knowingly furnishes the record or information to a person who is not authorized by law to receive the record or information is guilty of a misdemeanor."). Corbin, however, does not allege that the Portland Police Department disclosed the information from the NCIC. Compl. ¶ 11. Therefore, the only question is whether the Portland Police Department was entitled to disclose the information from the VCIC.

■ First, the nondisclosure provisions of California law cannot protect Corbin once his criminal history information left the state of California. A state's statutes, regulations and policies cannot operate outside of its borders and impose duties on other states. *See, e.g., BMW of Am., Inc. v. Gore,* 517 U.S. 559, 571, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (noting that "no single State could . . . even impose its own policy choice on neighboring States"); *Bigelow v. Virginia,* 421 U.S. 809, 824, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) ("A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its citizens may be affected when they travel to that State"); *New York Life Ins. Co. v. Head,* 234 U.S. 149, 161, 34 S.Ct. 879, 58 L.Ed. 1259 (1914) ("[I]t would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State . . . .").

■ Second, even if California law did apply, Corbin received the community no-

tification protections provided by California law. *See* Cal.Penal Code § 290(m) (West 2000). Under California Penal Code § 290(m), a law enforcement agency is entitled to disclose the name, current address and other personal information of a sex offender to any "community members at risk," if a police officer "reasonably suspects" that a child "may be at risk" and determines that the community is likely to encounter the sex offender. *Id.* In this case, it was objectively reasonable for the Portland Police Department to conclude that children in the Portland community might be at risk from Corbin. *Id.* Criminal charges were pending against Corbin for sexual aggression towards a minor and possession of sexually explicit materials. Corbin Aff. ¶¶ 7, 11; Dunham Aff. ¶ 7; Chitwood Aff. ¶ 4, Exs. A & B. In addition, the Portland YMCA filed a complaint against Corbin for allegedly making sexually inappropriate remarks and gestures to three young boys. Dunham Aff. ¶ 2, Ex. A. Corbin resided near the Portland Boys and Girls Club, Portland High School, and the Portland YMCA. Corbin Aff. ¶ 16. It was likely, therefore, that children would encounter Corbin. Cal.Penal Code § 290(m)(6)(A) ("likely to encounter" means that "the agencies, organizations or other community members are in a location or in close proximity to a location where the offender lives...."). Therefore, even under California law and its protections, the Portland Police Department was entitled to disclose the relevant VCIC information to the community.

Third, whether the Portland Police Department had authority under California law to disclose Corbin's criminal record is ultimately irrelevant to whether he had a constitutional right to privacy in the information. The release of the information, even if a statutory violation, simply does not rise to the level of a constitutional violation. In *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), the United States Supreme Court determined that release of a criminal defendant's "rap sheet" constituted an unwarranted invasion of privacy under the Freedom of Information Act ("FOIA"). But the Supreme Court was careful to state that the disclosure constituted only an invasion of privacy under the FOIA, not the Constitution: "The question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question ... [whether] an individual's interest in privacy is protected under the Constitution." *Id.* at 761 n. 13, 109 S.Ct. 1468. In fact, the right to privacy under the Constitution is substantially narrower than under the FOIA. The First Circuit has stated that the right of confidentiality under the Constitution does not extend "beyond prohibiting profligate disclosure of medical, financial, and other intimately personal data." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 183 (1st Cir.1997). Corbin's arrest records do not fit those categories. *See Paul v. Davis*, 424 U.S. 693, 713–14, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (public identification of someone as an "active shoplifter" based upon an arrest record does not violate constitutional right to privacy).

## (2) Sensational and Inflammatory Manner of Disclosure

Corbin asserts that the sensationalism of the notification, including the presence of the media, and Chief Chitwood's allegedly inflammatory remarks amounted to a greater invasion of privacy than if the factual information had been published "prosaically ... and without fanfare." Application for T.R.O. and for Order to Show Cause Re: Prelim. Inj. at 14. But his argument is based upon Chief Chitwood's

"project[ing] the false inference that plaintiff was extremely unstable and likely to reoffend," *id.*, and proceeds to argue the reputation interest. I deal with the reputational argument in the next section. Corbin does not otherwise develop his bald assertion that disclosure of information that constitutionally can be made public may nevertheless invade a constitutional privacy right because of the manner in which it was disseminated, and provides no authority for the assertion. I therefore do not consider it further.

### (3) False and Inaccurate Disclosure

Corbin's assertions that there are inaccuracies in the VCIC record and the flyer do not change the privacy analysis. If something is not private to start with, getting it wrong does not make it private. (It may make it defamatory.) Corbin may have recourse in California to dispute the accuracy of his criminal history and may be able to contest whether it should have been disclosed by California authorities. *See Central Valley Ch. Of the 7th Step Found., Inc. v. Younger*, 214 Cal.App.3d 145, 164, 262 Cal.Rptr. 496 (1989) (noting that the Department of Justice "must ex-

ercise great care" with criminal history information because of "inaccurate or incomplete arrest records, and dissemination of criminal records outside the criminal justice system"). In addition, he may be able to argue that the Portland police defendants defamed him by the publication of false information. None of these claims, however, provides Corbin with a right of recourse for invasion of *privacy* under the Constitution. *Paul v. Davis*, 424 U.S. at 713, 96 S.Ct. 1155 (no constitutional privacy interest in avoiding defamation).

### (4) Disclosure of Home Address

Corbin also argues that a person has a privacy interest in limiting or controlling disclosure of his or her home address.[3] First Circuit caselaw on the right to privacy, however, permits the defendants to distribute the plaintiff's home address. *See Vega–Rodriguez*, 110 F.3d at 182–83 (constitutional privacy interest limited to medical, financial and other intimately personal data); *Borucki v. Ryan*, 827 F.2d 836, 840–43 (1st Cir.1987). A home address has not been identified as "intimately personal data" that warrants constitutional privacy protection.[4]

---

**3.** In actuality, Corbin's privacy grievance is not the distribution of his address? addresses, after all, are widely available in print and online directories. It is his address coupled with his identity as a sex offender that disturbs him.

**4.** The First Circuit has dealt with home addresses under Freedom of Information Act and Federal Labor Relations Authority cases. Although it recognizes a "discernible interest" in avoiding enforced disclosure of one's address and rejects court decisions that find it "entirely negligible," it nevertheless finds the privacy interest "relatively modest." *FLRA v. United States Dep't of Navy*, 941 F.2d 49, 55–56 (1st Cir.1991). In such cases, it has "not hesitated in the past to allow disclosure of names and addresses when there has been a strong public interest in favor of disclosure and when a significant privacy interest other

than the release of the address was lacking." *Aronson v. United States Dep't of HUD*, 822 F.2d 182, 186 (1st Cir.1987). Even a case (from another Circuit) that recognized a constitutional right to privacy in one's home address recognized that the community also has an "interest in knowing where prior sex offenders live so that susceptible individuals can be appropriately cautioned." *See Paul P. v. Verniero*, 170 F.3d 396, 404 (3d Cir.1999). The court found the government's interest in preventing sex offenses "compelling." *Id.* The same compelling interest exists here. Corbin allegedly made inappropriate sexual comments and gestures to three young boys in the recent past. Dunham Aff. ¶ 2, Ex. A. He is also charged with sexual aggression towards a minor and possessing sexually explicit materials. Corbin Aff. ¶ 11; Dunham Aff. ¶ 7; Chitwood Aff. ¶ 4, Exs. A & B. In

Therefore, the community notification did not violate Corbin's constitutional right to privacy.

### B. Ex Post Facto

Corbin argues that the community notification constituted additional punishment for the California sex offenses he committed and thereby violated the *ex post facto* clause of the Constitution. *See* U.S. Const., art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law."). The *ex post facto* clause prevents the state or municipalities from passing "laws," "which make[ ] more burdensome the punishment for a crime, after its commission. . . ." *Hamm v. Latessa,* 72 F.3d 947, 956 (1st Cir.1995) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)).

■ The *ex post facto* clause is directed against all *legislative* acts, "whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, or a regulation or order of some other instrumentality of the state exercising delegated legislative authority." *Ross v. Oregon,* 227 U.S. 150, 163, 33 S.Ct. 220, 57 L.Ed. 458 (1913). There is nothing on the present record to suggest that the notification here was part of a binding administrative regulation or policy that should be treated as a "law." *See Hamm,* 72 F.3d at 956 n. 14 (noting that "the Supreme Court has not addressed the question of whether an administrative policy or regulations can be an ex post facto law"). Corbin merely alleges that "Defendant City [of Portland] has an unwritten policy and custom of performing community notification against all convicted sex offenders residing in the city of Portland, regardless of how long ago their offenses were committed. . . ." Compl. ¶ 4.

addition, the Portland Police Department received information that Corbin was a regis-

On the facts before me, the notification by the defendants at the most arises from a policy that "serve[s] merely as guidelines for discretionary decisionmaking." That is insufficient to rise to an *ex post facto* violation. *Hamm,* 72 F.3d at 956 n. 14.

■ Moreover, there is no *ex post facto* violation because the notification does not punish Corbin. *See, e.g., Roe v. Office of Adult Prob.,* 125 F.3d 47, 53–55 (2d Cir. 1997) (holding that Connecticut probation office policy that notifies community of sex offender parolees does not constitute punishment); *Russell v. Gregoire,* 124 F.3d 1079, 1089 (9th Cir.1997) (holding that Washington sex offender registry does not constitute punishment); *E.B. v. Verniero,* 119 F.3d 1077, 1105 (3d Cir.1997) (holding that community notification in New Jersey's sex offender law does not constitute punishment); *Doe v. Weld,* 954 F.Supp. 425, 434–35 (D.Mass.1996) (denying a preliminary injunction because it was unlikely that the party seeking relief would succeed in showing that Massachusetts sex offender notification constitutes punishment). Corbin has not shown that the notification program is punitive (the record indicates that it was used in the interests of public safety), *see Kansas v. Hendricks,* 521 U.S. 346, 360–61, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (requiring clear proof of punitive purpose); or that the punitive purpose or effect of the notification was so great as to negate the remedial intent of the policy. *See Doe v. Weld,* 954 F.Supp. at 434–35.

Therefore, the community notification did not violate the *ex post facto* provision.

### IV. DUE PROCESS

#### A. Substantive Due Process

■ Corbin argues that the community notification violated his substantive due

tered sexual offender. Dunham Aff., Ex. A. These factors amount to a compelling interest.

process rights under the Fourteenth Amendment. In order to recover under a substantive due process theory, Corbin must demonstrate either that he was deprived of a specific liberty interest protected by the Fourteenth Amendment, or that the defendants' conduct "shocks the conscience." *Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 622 (1st Cir.2000); *Brown v. Hot, Sexy & Safer Prod., Inc.,* 68 F.3d 525, 531 (1st Cir.1995). The United States Supreme Court's decision in *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), forecloses the first claim, based on a specific liberty interest. According to the Supreme Court, substantive due process applies only to rights that are "fundamental" or "implicit in the concept of ordered liberty." There is no substantive due process right in preventing the publication of a person's arrest record; privacy rights include only those relating to marriage, contraception, family relationships, child rearing and education. *Davis,* 424 U.S. at 713, 96 S.Ct. 1155 (finding no violation in notifying community that someone is an "active shoplifter" based upon arrest record). Corbin's claim does not fit within these categories.

Under the second theory, that the defendants' actions "shock the conscience," the plaintiff's substantive due process claim also fails. In order to shock the conscience, the defendants' action must have been " 'egregiously unacceptable, outrageous, or conscience-shocking.' " *Cruz–Erazo,* 212 F.3d at 623 (citations omitted). The vast majority of successful cases involve a high degree of physical intrusiveness. *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (holding that pumping a criminal defendant's stomach shocked the conscience); *Harrington v. Almy,* 977 F.2d 37, 43–44 (1st Cir.1992) (holding that reasonable factfinder could find that forcing a police officer who was charged with child abuse to undergo a physically intrusive test before returning to work shocked the conscience); *Cf. Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp.,* 246 F.3d 1, 7 (1st Cir.2001) (noting that verbal-based substantive due process claims must be very egregious to shock the conscience); *Cruz–Erazo,* 212 F.3d at 623 (holding that verbal harassment by police officers did not shock the conscience because it was not physically intrusive or violent, nor did it strike at any protected relationship, such as between a parent and child); *Souza v. Pina,* 53 F.3d 423, 427 (1st Cir.1995) (holding that prosecutor's statements to media linking the plaintiff to the murder of nine women did not shock the conscience).

■ Here, the defendants' conduct did not involve any physical intrusion or violence to Corbin. In addition, although the First Circuit has left open the possibility that verbal harassment or conduct in egregious cases may shock the conscience, the facts presented here do not meet that standard. *See Souza,* 53 F.3d at 424–27 (refusing to apply the protection to verbal harassment despite the prosecutor's statements to the media encouraging the linking of the plaintiff's son and nine murders); *Pittsley v. Warish,* 927 F.2d 3, 7 (1st Cir.1991) (refusing to apply the protection to verbal harassment where a police officer stated "if we ever see your father on the streets again, you'll never see him again," and used vulgar language to two young children). The community notification here did not "strike at the basic fabric" of any protected relationship or any basic right. *Cruz–Erazo,* 212 F.3d at 623.

As a result, Corbin's substantive due process claim fails.

### B. Procedural Due Process

■ Corbin also argues that the defendants violated his right to procedural due

process—*i.e.*, notice and a hearing before the community notification occurred. In order for Corbin to be entitled to prior notice and a hearing, the defendants' disclosure must threaten a "liberty" interest. *See Paul,* 424 U.S. at 701, 96 S.Ct. 1155; *Borucki,* 827 F.2d at 842–43. I have already ruled that Corbin did not have a constitutional privacy interest in his identity, his address and his arrest/conviction record. Corbin claims that much of what was said about him was outrageously wrong. If so, he may have a state law claim for libel. The Supreme Court has made very clear, however, that damage to reputation?the gist of Corbin's concerns?is simply not enough for federal constitutional protection.

The notification must infringe on reputation *and in addition* some more tangible interest, such as employment or alteration of legal status, to occasion due process protection. *Paul,* 424 U.S. at 701, 712, 96 S.Ct. 1155; *Borucki,* 827 F.2d at 842–843; *see also Brennan v. Hendrigan,* 888 F.2d 189, 195 (1st Cir.1989) ("[R]eputational injury must coincide with some other 'alteration of status' " (citing *Paul,* 424 U.S. at 709–10, 96 S.Ct. 1155)); *Doe v. Pataki,* 3 F. Supp.2d 456, 467–68 (S.D.N.Y.1998) (finding a liberty interest at stake where damage to reputation was coupled with burdensome registration requirements and added criminal liability). Corbin's com-

plaint lacks the "something more" that would entitle him to procedural due process.[5]

## V. CONCLUSION

I conclude that Corbin is highly unlikely to succeed on the merits of his claims under 42 U.S.C. § 1983 asserting violations of his right to privacy, right to be free from *ex post facto* laws and right to substantive and procedural due process. Therefore, his motion for a temporary restraining order is DENIED.

So ORDERED.

5. This lawsuit is not against California authorities. Thus, I need not address whether a violation of statutory confidentiality by the California Department of Justice in inappropriately releasing confidential information would satisfy the "something more" requirement. *See Byron M. v. City of Whittier,* 46 F.Supp.2d 1032, 1036 (C.D.Cal.1998) (denying preliminary injunction on due process claim for lack of liberty interest inasmuch as the California sex registry law "disseminates information that is available to the public because California's Public Records Act renders the [sex registry] information ... a matter of public record").

Corbin is also not subject to Maine's Sex Offender Registration and Notification Act. 24–A M.R.S.A. § 11101, *et seq.,* because he was required to register in California for his sex offense more than ten years ago. 34–A M.R.S.A. § 11225 ("[A] sex offender required to register because the sex offender established a domicile in this state subsequent to being declared a sex offender in another state ... shall register for a maximum of 10 years from the date when the sex offender was first required to register....") He therefore has no rights under that statute.