Hendricks v. DRED                              CV-01-307-M    03/12/02   P

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Gary W. Hendricks and
Kathleen L. Hendricks

   v.                                    Civil No. 01-307-M
                                         Opinion No. 2002 DNH 060

George M. Bald, Commissioner, et al.


## REPORT AND RECOMMENDATION

In this civil rights action, pro se plaintiffs Gary and

Kathleen Hendricks seek relief against various state and local

government officials[1] to redress alleged violations of their

constitutional rights.  Before this court is the plaintiffs'

motion for a preliminary injunction order directing the

defendants to use their authority to prohibit the use of

motorized vehicles on an abandoned railroad bed abutting the

_____

[1]The defendants include George M. Bald, Commissioner for the
State of New Hampshire Department of Resources and Economic
Development, Paul Gray, Chief of the New Hampshire Division of
Parks and Recreation ("NHDPR"), Richard McLeod, Director of
NHDPR, Robert Spoerl, Program Specialist at the New Hampshire
Bureau of Trails, Ronald Alie, Colonel at the New Hampshire
Department of Fish & Game ("Fish & Game"), Todd Szewczyk,
Conservation Officer at Fish & Game, John J. Singelais, Selectman
for the Town of Greenville, New Hampshire ("Greenville"), Russell
R. Cook, Selectman for Greenville, Michael Lamarre, Selectman for
Greenville, David L. Benedict, Chief of Police for Greenville,
and Larry Duval, a police officer for Greenville.

plaintiffs' property. The plaintiffs' motion has been referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, I recommend that the motion be denied.

Background

Plaintiffs own a home in Greenville, New Hampshire, which they had intended to operate as a bed-and-breakfast. Abutting the plaintiffs' property is an abandoned railroad bed. At some point after the plaintiffs purchased their home, members of the public began operating motorized recreational vehicles along the railroad bed. The presence of these vehicles behind the plaintiffs' home has increased over the years. As a result, the plaintiffs have been subjected to significant noise on a daily basis and at all hours of the day and night. The noise from the vehicles has disrupted the plaintiffs' efforts to raise productive honeybees and turkeys on their property. In addition, the vehicles create an extensive amount of dust that settles on the plaintiffs' home. The plaintiffs further contend that as a result of this use of the railroad bed, the area is littered with trash and drug paraphernalia.

Due to the disturbances caused by motorized recreational

vehicles along the railroad bed, the plaintiffs have not been able to fulfill their desire to use their home as a bed-and-breakfast and have been deprived of the peace and enjoyment that they expected to obtain when they purchased their property. Moreover, the plaintiffs have submitted evidence showing that in the opinion of people qualified to assess the impact of noise on property values, the plaintiffs have experienced a diminution in the value of their property.

The plaintiffs have made exhaustive efforts to remedy their situation. Initially, the railroad bed was owned by a railroad company. The plaintiffs convinced the company to post signs on the property and requested the local police to prevent trespassers from entering the property. These efforts proved fruitless. Subsequently, the plaintiffs attempted to purchase the railroad bed from the railroad company.[2] The State of New Hampshire, however, exercised its right of first refusal, and purchased the property instead. In addition, the plaintiffs have complained to the defendants and/or their agencies repeatedly and have contacted state legislators regarding the issue. None of

---

[2]The plaintiffs had hoped to purchase the railroad bed from the railroad company in order to prevent motorized vehicles from using the property and to maintain the land for other types of recreational use.

3

these actions has reduced or eliminated the presence of motorized recreational vehicles behind plaintiffs' property.

According to the plaintiffs, the defendants have failed to enforce state laws and local ordinances prohibiting the use of motorized recreational vehicles along the railroad bed. The defendants maintain that they have no such obligation. Moreover, while the State concedes that the railroad bed has not been designated as land for use by motorized recreational vehicles, it argues that no state statutory authority specifically prohibits such use.

## Discussion

Plaintiffs are seeking a preliminary injunction order directing the defendants to enforce state and local laws restricting the use of motorized recreational vehicles along the railroad bed abutting the plaintiffs' property. Even assuming the existence and applicability of such state and local laws, the defendants correctly assert that the plaintiffs have failed to demonstrate a likelihood of success on the merits of their civil rights claims, and are therefore not entitled to preliminary injunctive relief.

1.    Preliminary Injunction Standard

In order to determine whether a preliminary injunction is appropriate, this court must apply the four part test adopted by the First Circuit.  The test requires the court to evaluate (1) the likelihood that the plaintiffs will succeed on the merits, (2) the potential for irreparable injury if the injunction is not granted, (3) whether the harm to the plaintiffs outweighs the harm defendants would suffer from the imposition of an injunction, and (4) the effect of the issuance of an injunction on the public interest.  See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).  The critical factor is the plaintiffs' ability to demonstrate a likelihood of success on the merits.  See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).  If the movant fails to show that it will probably succeed on its claims, the court will deny the motion.  Id.

2.    Likelihood of Success on the Merits

Plaintiffs assert that by failing to enforce state and local laws restricting the use of motorized recreational vehicles behind plaintiffs' property, the defendants have deprived them of their constitutional rights to due process and equal protection.[3]

_____

[3]Plaintiffs brought their claims pursuant to 42 U.S.C. § 1983.  "As is well established, § 1983 creates no independent

5

I will address these claims in turn.

A.    Due Process Claims

"The Due Process Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deprive any person of life, liberty or property without due process of law'." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 194 (1989). Because the plaintiffs have not alleged a deprivation of any procedural safeguards, their claim invokes the substantive rather than the procedural component of the Due Process Clause. See id. at 195. In order to establish a violation of their right to substantive due process, the plaintiffs may demonstrate either "that a specific liberty or property interest protected by the federal due process clause has been violated, or that the state's conduct 'shocks the conscience'." Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992)(citations omitted). See also Brown v. Hot, Sexy & Safer Prods., 68 F.3d 525, 531 (1st Cir. 1995). The

substantive rights, but rather provides a cause of action for governmental violations of rights protected by federal law." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000). In order to state a claim under § 1983, "a plaintiff must allege (1)the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law." Id. In this case, the plaintiffs assert that the defendants, acting under color of state law, violated the plaintiffs' constitutional rights to due process and equal protection.

plaintiffs have not demonstrated that they will be able to succeed on either theory.

As the United States Supreme Court has explained,

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty or property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act . . . It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.

DeShaney, 489 U.S. at 195-96. Consistent with these principles, both Supreme Court and First Circuit cases generally recognize no affirmative right to governmental aid, even where such assistance may be necessary to secure property interests that the government itself may not infringe. See id. at 196; see also Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)("the Due Process Clause ordinarily does not require the state to protect an individual's life, limb, or property against the marauding of third parties not acting to the state's behoof."); Malachowski v. City of Keene, 787 F.2d 704, 708 (1st Cir. 1986)(misuse or disregard of state law by state officials does not constitute a deprivation of property without due process of law). The plaintiffs have

7

asserted no basis for recognizing an exception to this general rule under the factual scenario presented in this case.

In a case that is factually similar to the matter before this court, the Second Circuit refused to recognize a due process right to the enforcement of applicable laws. In <u>Gagliardi v. Village of Pawling</u>, plaintiff landowners asserted several claims under section 1983, including due process claims, against various municipal officials for failing to enforce applicable zoning laws against the plaintiffs' neighbors. 18 F.3d 188, 192 (2d Cir. 1994). In particular, the plaintiffs accused the defendants of violating their constitutional rights by failing to prevent a neighboring business from causing excessive noise, storing hazardous material on its property and inadequately draining its land. <u>Id.</u> In affirming the district court's dismissal of the plaintiffs' due process claims, the Second Circuit found that no due process violation had occurred because the plaintiffs had no right to demand that the municipal defendants enforce the zoning laws. <u>See</u> <u>id.</u>

I conclude that the Due Process Clause imposes no obligation upon the defendants to enforce laws or ordinances prohibiting or otherwise restricting the use of motorized recreational vehicles

on property abutting plaintiffs' home. Accordingly, the plaintiffs have little if any prospect of succeeding on the merits of their claim that the defendants' failure to enforce such laws and ordinances has violated a liberty or property interest protected by the federal Due Process Clause.

Nor are the plaintiffs likely to show that the defendants' actions "shock the conscience." In order to show a violation of due process under this theory, the plaintiffs must demonstrate that the state action in question is "egregiously unacceptable, outrageous, or conscience-shocking." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622 (1st Cir. 2000)(internal quotations omitted). While not foreclosing the possibility that severe verbal harassment could constitute "conscience shocking" behavior, to date the First Circuit has found governmental conduct to shock the conscience only in instances where "the state actors engaged in 'extreme or intrusive physical conduct'." Brown, 68 F.3d at 531 (quoting Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995)). See also Cruz-Erazo, 212 F.3d at 622. Nothing about the defendants' alleged conduct in this case is sufficiently severe or outrageous to offend due process. Accordingly, the plaintiffs have not shown that they are likely

9

to prevail on their due process claims.

B.    Equal Protection Claims

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)(quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  See also United States v. Craveiro, 907 F.2d 260, 265 (1st Cir. 1990)("Equal protection guarantees that similar individuals will be dealt with in a similar manner by the government.").  In order to prevail on their equal protection claim, therefore, the plaintiffs must show that the defendants have treated them differently than they have treated other, similarly situated property owners.  See Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995).  In addition, the plaintiffs must demonstrate that the discrimination was intentional.  See Hayden v. Grayson, 134 F.3d 449, 453 (1st Cir. 1998)(to succeed on their equal protection claim, the plaintiffs must establish discriminatory intent); Brandt v. Davis, 191 F.3d 887, 893(8th Cir. 1999)(state officers' unlawful administration of a state

10

statute resulting in unequal application to those who are entitled to be treated alike violates equal protection only if the discrimination is intentional or purposeful).

The plaintiffs have offered no evidence indicating that the defendants would have enforced applicable laws against the use of motorized recreational vehicles on state property at the request of another property owner who was similarly situated to the plaintiffs. Nor have they shown that the defendants purposefully discriminated against them. Accordingly, the plaintiffs are unlikely to succeed on the merits of their equal protection claim. See Gagliardi, 18 F.3d at 193 (finding equal protection claim insufficient as a matter of law where plaintiffs failed to allege that municipal defendants would have enforced zoning laws against neighboring property at the request of another similarly situated resident).

<u>Conclusion</u>

Because the plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their claims against the defendants, I recommend that their motion for a preliminary injunction (document no. 2) be denied.

Any objections to this Report and Recommendation must be

11

filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


                                            _____
James R. Muirhead
United States Magistrate Judge

Date:   March 12, 2002

cc:     Gary W. Hendricks, pro se
        Kathleen L. Hendricks, pro se
        Amy B. Mills, Esq.
        Donald L. Smith, Esq.
        Patrick E. Donovan, Esq.